# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2583

_____

United States of America

*Plaintiff - Appellee*

v.

Dwight Frederick Barnes

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: May 14, 2021
Filed: August 20, 2021

_____

Before COLLOTON, WOLLMAN, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Dwight Barnes was convicted for conspiracy to distribute methamphetamine. He appeals, saying that the district court[1] should have granted his motion to suppress

___

[1] The Honorable Nancy E. Brasel, United States District Judge for the District of Minnesota.

geolocation data from his cell phone and his Google email account and that cumulative evidentiary errors affected the fairness of his trial. We affirm.

I.

Dwight Barnes was a drug dealer who dealt with several confidential informants. The informants told police he used a cell phone number ending in #9283. Police eventually sought two warrants for cell phone location data. The first warrant requested real-time geolocation data from the #9283 cell phone. The second warrant requested geolocation data for another cell phone that Barnes used—this one ending in #4603. The second warrant application was similar to the first. Only information from the #4603 warrant was introduced at trial.

After police got the #4603 warrant, they applied for a search warrant for a Google email account for Barnes's small business. The warrant also requested historical geolocation data. Police believed that Barnes used the small business to launder drug money. Police then applied for another search warrant, this time for Barnes's personal Google email account and the historical geolocation data tied to that account. Only information from the personal Google email warrant was introduced at trial.

Police arrested Barnes after GPS data put him near a drug drop-off location. Apparently, Barnes and his associates had developed a mailing scheme to avoid detection. Barnes's associates would mail packages of meth to the home of two unsuspecting people—Eric Hoerner and his girlfriend, Shawna Cada. Barnes and others would track delivery schedules, and take the packages of meth before Hoerner and Cada found them. But one day, Cada beat them to it. Barnes and one of his associates tried to get Cada to hand over the package, but she refused and called 911. Barnes tracked down Hoerner at a restaurant and tried to convince him to give up the package. Hoerner refused and went home to meet the officers who responded to

Cada's 911 call. There, Hoerner opened the box, and police confirmed there was meth inside. Police used geolocation data to find Barnes and arrested him.

Barnes was ultimately indicted for conspiracy to distribute methamphetamine, 21 U.S.C. § 846. The Government introduced historical geolocation data from Barnes's personal Google account to show that he had been at the same home before when other drug packages had been dropped off. Hoerner and Cada testified at trial and identified Barnes as one of the men who tried to pick up the meth. The jury convicted Barnes and he was sentenced to 262 months in prison. This appeal followed.

II.

"On appeal from the denial of a motion to suppress, we review a district court's findings of fact for clear error and its determination of probable cause and the application of the *Leon* exception de novo." *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009) (citation omitted). "Though the issue of probable cause is reviewed de novo, this court accords great deference to the issuing judge's determination that the affidavit established probable cause." *Id.* (citation omitted) (cleaned up).

Under the good faith exception, we will generally refrain from suppressing evidence obtained in good-faith reliance on an objectively reasonable warrant. *United States v. Leon*, 468 U.S. 897 (1984). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the issuing judge's authorization." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (citation omitted) (cleaned up). The good-faith exception applies unless the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (citation omitted). "Before reviewing

the existence of probable cause, this court may consider the applicability of the good-faith exception to the exclusionary rule." *United States v. Williams*, 976 F.3d 807, 809 (8th Cir. 2020) (citation omitted).

Barnes argues that the affidavits lacked any information that there was probable cause to believe that he traveled anywhere to traffic drugs. In other words, he claims that the warrants did not establish a nexus between the evidence suggesting he trafficked the drugs and the geolocation data requested by the warrant.[2]

In *United States v. Lopez-Zuniga*, we applied the *Leon* good-faith exception to a warrant that allowed GPS tracking of the defendant's car for sixty days despite the lack of a demonstrated nexus between the car and the suspected crime of drug trafficking. 909 F.3d 906, 910–11 (8th Cir. 2018), *cert. denied*, 139 S. Ct. 2648 (2019). We said, "we do not think it entirely unreasonable for an officer to think that [the defendant] might use his car to move about in furtherance of a drug conspiracy." *Id.* at 911. We also "[did not] think it entirely unreasonable for an officer to conclude that a connection between the car and the contraband need not be as strong when the warrant merely authorizes tracking the car's movement (and thus its driver) rather than searching the car itself." *Id.*

This case is similar to *Lopez-Zuniga*. In both cases, police relied on a magistrate's approval of a warrant to track a suspected drug trafficker for an extended period of time. While this case involves location data from a cell phone and a Google account instead of a car, each is a proxy for the defendant's location at a given time. Barnes has not supplied any intervening precedent to undermine *Lopez-Zuniga*. The officers were entitled to rely on the magistrate's nexus finding, so *Leon* good faith

---

[2]At oral argument, Barnes argued that the warrants lacked probable cause generally. But in his opening brief Barnes conceded that "the affidavits established probable cause to believe [he] was involved in trafficking." Barnes Br. 26. In light of his concession, we address only the nexus issue.

applies to the warrants. We affirm the district court's denial of the motion to suppress.

## III.

Barnes next argues that his trial was spoiled by the cumulative effect of a few evidentiary rulings. "We will not overturn a conviction based upon the cumulative effect of trial errors unless there is substantial prejudice to the defendant." *United States v. Jewell*, 614 F.3d 911, 929 (8th Cir. 2010). "The cumulative effect of errors amounts to substantial prejudice if the case as a whole presents an image of unfairness which has resulted in the deprivation of the defendant's constitutional rights." *United States v. Ruzicka*, 988 F.3d 997, 1011 (8th Cir. 2021) (citation omitted) (cleaned up).

The errors alleged by Barnes were relatively minor evidentiary matters in a case that was not close. The district court admitted (1) statements in a police interview and the background of a body cam video that Barnes argues improperly bolstered the credibility of witnesses at trial; (2) testimony by an investigator saying that he found an informant reliable during the probe into Barnes; (3) and an identification of Barnes as one of the two men who tried to pick up the package.

Even if all of this evidence was kept out, the core facts supporting the verdict remain. Hoerner testified that Barnes approached him at the restaurant, apologized for sending the package of meth to his house, and asked Hoerner to hand over the package. Hoerner's friend who was with him at the restaurant corroborated the story. When Hoerner opened the package, police found meth inside. This, coupled with the geolocation data and testimony of the informants, made it clear that Barnes was trafficking meth. All told, the trial did not "present[] an image of unfairness" which resulted in the deprivation of Barnes's constitutional rights. *Ruzicka*, 988 F.3d at 1011 (citation omitted).

## IV.

The judgment of the district court is affirmed.

_____